**People of the State of Illinois, Plaintiff-Appellee, v. Tony Parker, Defendant-Appellant.**

Gen. No. 51,312.

First District, Third Division.

June 27, 1968.

James F. Slager and Robert P. Cummins, of Chicago, for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Francis J. Carey, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court.

A jury found the defendant, Tony Parker, guilty of theft of property valued in excess of $150. After a hearing in aggravation and mitigation he received a sentence of from five to ten years in the penitentiary.

Three contentions are raised on appeal. First, that the stolen automobile was not proved to be over $150 in value; second, that the defendant was not identified beyond a reasonable doubt as the perpetrator of the offense, and third, that the indictment was defective.

In the early morning of June 11, 1964, Officer Thomas of the Chicago Police Department was driving east on a one-way street in a squad car when he noticed an auto approaching from the wrong direction. Thomas flashed the light atop the squad car and the driver of the auto stopped when the vehicles were almost parallel. The officer turned the squad car's spotlight on the auto and its driver half opened the auto's door and inquired what the trouble was. He was informed that he was on a one-way street and was asked to pull to the curb. He pulled over,

hesitated for a moment and then sped away. Thomas turned the squad car around, gave chase and radioed to the police communication center for assistance.

During the chase the cars attained speeds of up to 95 miles per hour and at least six other police vehicles were involved in the attempt to intercept the fleeing auto. At one point Thomas attempted to curb the auto and pulled alongside of it. However, the other driver veered into Thomas causing him to lose control of his car and go over an embankment. The squad car sustained a blow-out in the process. After changing the tire the officer proceeded for a block or two until he came upon the car he had been pursuing. It had struck a tree and its driver had vanished. Thomas then received word over the two-way radio that a man was being held in custody about three blocks away.

The defendant had been apprehended in a steel storage yard by officers of the Canine Corps of the Chicago Police Department at approximately 4:30 a. m. Police dogs on long leashes had run to a 15-foot high pile of girders and started barking. A flashlight revealed the defendant on top of it. After a little delay he came down and when asked what he was doing in the yard replied that he had "hoboed" from St. Louis on a coal car. He was attired in a well-pressed, blue suit and a clean, white shirt. Officer Thomas then arrived at the yard and identified the defendant as the driver of the auto he had been chasing.

The ownership of the auto was traced and the owner came to the scene of the crash and identified it. He testified that he had last seen the auto parked alongside of his apartment about 2:00 a. m. on the morning of the 11th. He said that he had paid $1,300 for it some six months before the theft and that he had expended $225 repairing it between the purchase and the theft. He described the damage to the auto and stated that the cost of repairing it would be $200.

After both sides had rested, the prosecution asked leave of court to reopen its case for the purpose of introducing further evidence of the auto's value. Permission was granted over the defendant's objection and the sales manager of the automobile agency which was repairing the auto, a man who had fourteen years' experience in the automobile business, was called as a witness. He described the auto belonging to the complainant and stated that, in his opinion, its fair cash market value when it was taken was between $1,400 and $1,500.

The defendant argues that the testimony of the owner was not competent to establish the car's value, that the trial court erred in permitting the State to reopen its case and that the testimony of the sales manager was not connected to the stolen auto.

 That value which makes the offense of theft a felony rather than a misdemeanor is the fair cash market value of the article at the time and place of its taking. People v. Kurtz, 69 Ill App2d 282, 216 NE2d 524 (1966). The testimony of the auto's owner as to its cost some six months prior to the theft was, therefore, not satisfactorily probative of its value on the date of the theft. Nor was his testimony as to the cost of repairs evidence of such value. People v. Kelly, 66 Ill App2d 204, 214 NE2d 290 (1965). The sales manager's testimony, however, provided adequate proof of the auto's value when it was stolen and justified the jury's finding that its fair market value was in excess of $150.

 It is within the trial court's discretion to reopen a case and a court of review will not interfere with the exercise of this discretion unless it is clearly shown to have been abused. People v. Simpson, 76 Ill App2d 441, 222 NE2d 102 (1966); People v. Moore, 74 Ill App2d 24, 220 NE2d 105 (1966). It is apparent from the record that the Assistant State's Attorney was apprehensive

of the evidence he had introduced to prove value. Immediately upon the close of the defense testimony he sought permission to call a more qualified witness. The defendant has not shown that the testimony was unfair or that he was prejudiced by its being received out of sequence and he made no attempt to rebut it by introducing evidence of contrary value. The trial court did not abuse its discretion by allowing the State to reopen the case.

■ It is further argued that the expert testimony as to market value was insufficient because it was never shown that the auto the sales manager was referring to and the car owned by the complaining witness were one and the same. We have examined the manager's testimony and conclude that the vehicle was properly identified.

The sufficiency of Officer Thomas' identification is next attacked. The defendant notes that the confrontation between Thomas and the driver of the auto took place in the early morning hours while it was still dark and that it lasted but a short time. He points out that Thomas was unable to recall whether the defendant had a hat on; that Thomas testified that a set of keys, found by him in the auto after it crashed, had been in his exclusive possession but that another officer stated the keys were in his possession for a period of time during the investigation of the case; and that Thomas testified that, after the squad car had the blow-out, he was disabled for ten minutes while some citizens and himself put on a spare tire, but did not tell what his partner was doing at this time.

■ ■ The sufficiency of an identification is ordinarily a question of fact for the jury's determination and its finding will not be upset on review unless the testimony is so unsatisfactory as to create a reasonable doubt of the accused's guilt. People v. Brown, 86 Ill App2d 163,

■■■■■■■■■■

229 NE2d 922 (1967). Minor discrepancies in the testimony of a witness go only to the weight to be given the testimony. People v. Cooper, 69 Ill App2d 18, 216 NE2d 168 (1966).

■■■ Thomas had an opportunity to view the driver on not one, but two occasions: once when he talked to him as the autos were nearly parallel, and again when he attempted to curb the fleeing auto. Although it was dark at the time of the first encounter, the squad car's spotlight was focused on the auto and that vehicle's interior light came on when its driver half opened the door and inquired as to what was wrong. Thus, there was ample illumination to enable the officer to observe the driver.

The fact that Thomas could not recall whether the driver wore a hat diminishes in importance when it is considered that the witness qualified his testimony as to the driver's attire by stating that he remembered how the driver was *partially* dressed. The contradiction by the officer as to the exclusive possession of the set of keys was peripheral to the main issue and went only to the weight to be accorded the witness' testimony.

Finally, the assertion that Thomas did not refer to the activity of his partner is unimportant when placed in proper perspective. On direct examination Thomas testified that he had been accompanied by a partner on the morning of the 11th, but explained that his partner would be unable to testify because he was "on the medical at home." In answer to a preliminary question concerning what he had observed on the morning in question Thomas replied that: "On patrol we observed the car coming . . . ." At this juncture he was admonished by the prosecutor to: "Just tell what you observed, not 'we,' you, just you." After this, the witness spoke only in the singular and did not refer to his partner during the remainder of his testimony. When viewed in this con-

text Thomas' failure to account for his partner's activity while the tire was being changed is understandable and cannot be considered to reflect adversely upon his credibility.

■ The final contention is that the indictment is defective and should be dismissed because both the time and place of the offense were not stated therein as definitely as could have been. The indictment stated that the offense was committed within Cook County on June 11, 1964, and this is all that is required. People v. Scott, 82 Ill App2d 109, 227 NE2d 72 (1967); People v. Blanchett, 33 Ill2d 527, 212 NE2d 97 (1965).

The judgment of the trial court is affirmed.

Affirmed.

SCHWARTZ and SULLIVAN, JJ., concur.