THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CARLOS GUTIERREZ, Defendant-Appellant.

Second District No. 80-339

Opinion filed March 16, 1982.

Mary Robinson and David Morris, both of State Appellate Defender's Office, of Elgin, for appellant.

Gerald Grubb, State's Attorney, of Belvidere (Phyllis J. Perko, of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The defendant, Carlos Gutierrez, was convicted in a consolidated bench trial of the felony of leaving the scene of a vehicular accident involving death (Ill. Rev. Stat. 1979, ch. 95½, par. 11—401) and of several misdemeanor charges for driving on a suspended license. In his appeal he contends that the information was insufficient to charge the felony. Alternatively he contends that the evidence was insufficient to prove him guilty beyond a reasonable doubt and that the sentences were excessive.

At approximately 7:20 a.m. on December 23, 1979, Catherine Drozynski left her parent's home, to go jogging. At 8:30 a.m., her body was discovered in a ditch along Shaw Road, in Boone County. The cause of death was later attributed to head and pelvic injuries, consistent with an automobile collision.

Police who were called to the scene noted that weather conditions had been very foggy that morning. A number of passersby had congregated at the scene, but no one identified himself to police, as having been involved in the accident.

Investigating officers discovered a set of vehicular tracks, composed of mud or mud-type gravel, which proceeded on and off the highway near the accident site. Evidence was presented, without objection, which linked the muddy tracks with the vehicle involved in the accident. The tracks were traced, on and off the highway surface, to a short distance up the road from the accident site. There, the vehicle apparently left the road, and made a 180-degree turn, back toward the site. The tracks could not be traced from that point, due to the distortion caused by other vehicles.

There was evidence that no one had reported to the Boone County Sheriff or to any other authority in the area within 48 hours of the accident, to identify himself as the driver of the hit-and-run vehicle.

A length of car antenna, and its black plastic base was found near the victim. Automotive paint fragments were removed from the victim's clothing. This indicated to police that the hit-and-run vehicle could be a "greenish-gold" car, missing its radio antenna. An officer on routine patrol

located such a vehicle parked near the apartment complex where defendant lived.

Officers subsequently spoke with defendant, who admitted ownership of the car. Defendant was interviewed by a Spanish-speaking officer on December 26, 1979, after he was apprised of his rights. He told police that his Buick had not been moved over the weekend of December 23. When asked about the car's missing antenna, defendant explained that he had recently installed a tape player in his car. Because his radio did not work, and the antenna wasn't necessary to the operation of the tape deck, defendant removed the antenna and threw it in the city dump. Defendant told police that the dents in his front fender were old, and were perhaps caused when he changed a tire. Police officers testified that the paint was chipped on top of the car's front right fender. The metal was exposed and shiny—indicating a recent collision.

When asked about his whereabouts, defendant responded that he had been at a party in the early morning of December 23, at a friend's apartment within the complex. He walked home, because his child was sick, and remained at his apartment thereafter. Defendant insisted that his Buick had not been used. When informed that the police sought to impound the car, defendant told police, "Go ahead and take the car because I didn't do anything wrong. I know the car wasn't used and if you guys want to take the car go ahead."

Laboratory examination revealed that the section of car antenna and plastic base found at the accident scene matched the remnants of the antenna recovered from the Buick. Analysis revealed that the paint chips taken from the victim's clothing matched samples taken from the Buick. Fibers obtained from the grille of the Buick matched fibers taken from the victim's sweatpants. Finally, a pattern impressed on the Buick's right front headlight housing was similar to the elastic pattern of the lower band of the victim's sweatshirt.

Defendant was again interviewed by a Spanish-speaking officer on January 2, 1980. Police asked him if a friend, or his wife could have driven the car. Defendant responded that he had the only keys to the car, and he had kept them in his possession during the time in question. Defendant was then confronted with the lab results. Nonetheless, defendant persisted in his prior explanations. Defendant was thereafter placed under arrest, and taken into custody. An Illinois Secretary of State driver's abstract later revealed that defendant's driver's license had been suspended between March 12, 1976, and March 12, 1980.

Two witnesses testified on defendant's behalf. Uraulae Romo testified that he drank beer with defendant until 2 a.m. on December 23, 1979. At that time, defendant's wife telephoned, and asked defendant to come home because their child was sick. Defendant finished his beer, and then

went to his apartment (which was located within the same complex). Defendant was described as "a little bit drunk" when he left.

Defendant's wife, Karen Gutierrez, testified that she telephoned her husband at Romo's apartment, and asked him to come home because their child was sick. Defendant came home between 2:30 and 3 a.m. Karen went to sleep between 3:30 and 4 a.m., and got up once during the night to bottle her baby. She testified that defendant was in the apartment at those times, as well as when she arose at 10 a.m. She indicated that she was a light sleeper, and would have been awakened had defendant arisen during the night.

The trial court found the defendant guilty of all charges. Following a sentencing hearing, defendant was sentenced to serve 3 years' imprisonment on the charge of leaving the scene of an accident, to run concurrent with a 364-day term on each misdemeanor charge. The sentences, however, were to run consecutive "to any sentence heretofore imposed by any Court of the State of Illinois or the United States." No post-trial motions were filed on defendant's behalf.

The information charged the defendant with being the driver of a vehicle involved in an accident resulting in the death of the victim, with failing to immediately stop his vehicle at the scene and return and remain at the scene to fulfill the requirements of the statute (Ill. Rev. Stat. 1979, ch. 95½, par. 11—403), and in addition with failing to report information as to the accident at a police station or sheriff's office near the place where the accident occurred within 48 hours after the accident.

The defendant concedes that the record supports the finding that the automobile owned by defendant was involved in the accident and that the accident resulted in the death. He principally argues that the information did not charge him with knowledge of the offense; and that the State failed to prove beyond a reasonable doubt that the defendant was the driver of the vehicle with knowledge of the accident.

We are first confronted with a claim of waiver of the insufficiency of the information, based on the defendant's failure to challenge the information in the trial or to file a post-trial motion. See *People v. Jackson* (1981), 84 Ill. 2d 350, 358.

██ When, as here, a charge is attacked for the first time on appeal, it is sufficient if it apprises the defendant of "the precise offense charged with sufficient specificity to prepare his defense and allow pleading a resulting conviction as a bar to future prosecution arising out of the same conduct." (*People v. Pujoue* (1975), 61 Ill. 2d 335, 339.) Even where the omission concerns a material element, such as a mental state required for commission of the offense, the *Pujoue* rule is applicable. *People v. Walker* (1980), 83 Ill. 2d 306, 313-14.

We conclude that the information before us is sufficient to apprise

the accused of the precise offense charged with sufficient specificity to prepare his defense and to bar further prosecution arising out of the same conduct and is therefore adequate to charge the offense under the *Pujoue* standards. The defendant has not argued that the information as presently worded would fail to act as a bar to subsequent prosecution arising out of the same conduct, and it does not appear from the record that he could properly do so. His contention that the charge does not set forth the required mental state, that he had knowledge that his car had been involved in the accident, does not raise an issue of fundamental fairness in the circumstances since he was not prejudiced in the preparation of his defense. His defense was an alibi, and he had at all times maintained that he was not the driver of the hit-and-run vehicle. Since he claimed that he was not at the scene of the accident, the distinction between whether he struck the victim with or without knowledge could not have misled him in preparing his defense. (*Cf. People v. Montgomery* (1981), 96 Ill. App. 3d 994, 998.) We therefore find no reversible error in the form of the information.

■■ Defendant has also argued that the court treated the information as a strict-liability offense and therefore did not consider whether the defendant had knowledge of the event. While it is true that the court did not mention the element of knowledge in his findings and adverted to knowledge only at sentencing, it does not follow that the court followed the wrong standard. The court is presumed to know the law and apply it properly; it is not required that he must state for the record the standard of proof he has employed, and in determining the sufficiency of judgment the entire record will be searched to support the judgment. *People v. Thorpe* (1977), 52 Ill. App. 3d 576, 578.

We have made an exception to the waiver rule in cases tried by the court and in which the alleged error relates to the sufficiency of the evidence to sustain the findings of the trial court. (*People v. Christiansen* (1981), 96 Ill. App. 3d 540, 542.) Thus the defendant's challenge to the sufficiency of the evidence to support the conviction will be considered on appeal.

■■ While we agree that it was encumbent upon the State to establish beyond a reasonable doubt that the defendant "had knowledge that the vehicle he was driving was involved in an accident or collision" (*People v. Nunn* (1979), 77 Ill. 2d 243, 252), proof that the defendant was the driver of the vehicle may be established by circumstantial evidence. (*City of Marquette Heights v. Clarkson* (1978), 64 Ill. App. 3d 162, 164.) The physical and scientific evidence establishes that the victim of a hit-and-run accident collided with the front right fender of the vehicle with enough force to dent the fender, chip its paint, and snap its radio antenna off at its base. There was also evidence that the hit-and-run vehicle pulled

off the road, proceeded past the accident site and then made a U-turn back toward the site. The false exculpatory statements of the defendant were also probative as evidence of his consciousness of guilt. Defendant admitted ownership of the car and stated that only he had control of the keys and it had not been moved over the weekend of December 23. This was obviously false, as was defendant's explanation relating to the removal of the antenna and the explanation of how the dents in the right front fender had been previously caused. "A defendant's false exculpatory statement has independent probative value as evidence of consciousness of guilt and is admissible." (*People v. Mitchell* (1975), 35 Ill. App. 3d 151, 162.) When, from the evidence, it is absolutely clear that the defendant's vehicle, as to which he has the only keys by his own statement, has clearly participated in the accident, the familiar rule that one who elects to justify his presence at or near the scene of a crime while denying participation may be judged by the credibility of his explanation should equally apply here. (*Cf. People v. Spagnolia* (1961), 21 Ill. 2d 455, 458.) The alibi testimony did not establish defendant's whereabouts at the exact time of the accident and was not sufficient to raise a reasonable doubt under all of the circumstances.

Also, contrary to defendant's assertions, there was sufficient evidence in the record for the trier of facts to conclude that the defendant failed to report the accident to police within 48 hours as required by statute. While he argues that the State's witness testified to his contacts with other local authorities after the accident, which was hearsay, the defendant on each occasion denied his involvement in the transaction which left the reasonable inference that he had not reported. We conclude that all the necessary elements of the offense charged have been proved beyond a reasonable doubt.

The defendant seeks, alternatively, a remand for resentencing.

■■ He argues, first, that the trial court erred in imposing sentences which were made consecutive "to any sentence heretofore imposed by any Court of the State of Illinois or the United States." A sentence which is to begin at the termination of another term must clearly identify the prior sentence and its termination without resort to supplemental sources. (*People v. Toomer* (1958), 14 Ill. 2d 385, 387.) The language here used by the court, taken alone, is too broad and does not clearly identify the sentences to which the current sentence is to be made consecutive. (See *People v. Logan* (1974), 23 Ill. App. 3d 41, 42; *People v. Walton* (1969), 118 Ill. App. 2d 324, 333.) Nevertheless, the record is sufficient to enable us to determine and identify the previous sentence and its termination. Prior to stating the sentence, as we have above quoted, there was a discussion between the court and both counsel as to defendant's conviction in the Federal District Court of the offense of distribution of heroin

and reference to a sentence imposed of 6-8 years in the Federal penitentiary. The court specifically noted that it was within his "power to allow consecutive sentences with respect to the Federal charges and the State charges." Moreover, the Federal conviction and sentence were set forth in the presentence report before the judge and included the statement that defendant was in the custody of the United States authorities on the conviction of two counts of distribution of heroin for which the defendant had been sentenced to 6 to 8 years in the Federal prison and was currently being held by the Federal authorities. Reference to a presentence report has been held proper as a basis for determining the sentences that defendant is currently serving. *People v. Green* (1980), 83 Ill. App. 3d 982, 986.

The remaining reference to any sentence imposed by any court of the State of Illinois appears to be an inadvertent noting of the fact that the court was ordering the felony case to run concurrently with the misdemeanor charges involving driving while license suspended (including several which arose other than out of the accident in which the victim was killed and which were consolidated for trial). It is our order that the sentences for the instant charges shall, in any event, begin at the termination of the Federal sentence and that the mittimus be corrected accordingly.

The defendant has also argued that the trial court erred in considering as an aggravating factor that the crime was "heinous" and threatened serious harm because the defendant was found to have left the scene when it was not known whether the victim was still alive. He argues, first, that the legislature considered leaving the scene as an element of the crime and did not intend a factor implicit in its commission to be also a statutory aggravating factor. If a factor is implicit in an offense, a necessary element of an offense, "it is reasonable to conclude that the legislature already considered that factor in establishing the penalties." (*People v. Conover* (1981), 84 Ill. 2d 400, 405.) However, the record as a whole supports the imposition of consecutive sentencing. The record includes nine convictions for speeding since 1975, five suspensions of driving privileges, conviction for collision involving property damage, and convictions on a weapons charge as well as the Federal convictions for the distribution of heroin. Further, the aggravating factor of "threatened serious harm" is not inherently present in each violation of section 11—401 of the Illinois Vehicle Code (Ill. Rev. Stat. 1979, ch. 95½, par. 11—401). It is apparent that some "hit-and-run" incidents might involve minor injuries to the victim, or other circumstances which negative, as a factual matter, the threat of serious harm. We conclude that the court could properly take into account as an aggravating factor that under the circumstances it must have been clear that the driver knew at the impact

that serious injuries were caused and possibly the victim might be alive and need help and yet turned in the other direction and left the scene. While the defendant has argued that the tire tracks were not absolute proof, this was a matter which the trial court as the finder of the facts resolved against the defendant.

The judgments are therefore affirmed in accordance with this opinion. The cause is remanded for the sole purpose of correction of the mittimus.

Affirmed and remanded.

UNVERZAGT and VAN DEUSEN, JJ., concur.